IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John E. Werner,                                              Case No. 3:07CV353

       Plaintiff,

     v.                                                                ORDER

Progressive Preferred Insurance Company,

       Defendants.

This case involves a dispute over the distribution of insurance benefits. Plaintiff John Werner seeks damages for Progressive Preferred Insurance Company's [Progressive], an Ohio based insurance provider, alleged breach of their insurance agreement and bad faith distribution of insurance proceeds. Jurisdiction arises under 28 U.S.C. § 1332.

Pending are counter-motions as to both of plaintiff's claims. [Docs. 16, 20]. For reasons discussed below, Progressive's motion shall be granted and Werner's motion shall be denied.

**Background**

Werner originally purchased car insurance from Progressive in 1998 and has maintained insurance coverage with Progressive since then. As of 2002, Progressive insured Werner's 2001 Jeep, 2002 Ford Expedition, and Harley-Davidson motorcycle.

Werner's insurance policy specifies that Progressive, in addition to paying for property

1

damage to the vehicle, will provide $5,000 in "MedPay" benefits [i.e., coverage for up to $5,000 in

medical expenses resulting from a covered accident]:

> Subject to the Limit of Liability shown on the **Declarations Page**, if **you** pay a premium for Medical payments coverage, **we** will pay the **usual and customary charge** for reasonable and necessary expenses, incurred within three (3) years from the date of an **accident**, for medical and funeral services because of **bodily injury**: 1) sustained by an **injured person**; caused by **accident**; and 3) arising out of the ownership, maintenance or use of a motor vehicle. Any dispute as to the usual and customary charge will be resolved between us and the service provider.

[Doc. 16, Ex. 1]

> The Agreement also specifies:

> Any amounts payable to an Insured Person under this Part II [the section applicable to MedPay benefits] will be reduced by amounts paid or payable under Part I – Liability To Others or Part III – Uninsured/Underinsured Motorist Coverage.

[*Id.*].

On June 28, 2002, Robert Seibert struck Werner while he was operating his motorcycle.

Werner injured his leg, back and shoulder. As a result, he incurred $89,965.08 in medical bills.

On June 29, Werner reported the accident to Progressive. Progressive, in return, discussed

Werner's policy with him, specifically reminding him of the MedPay coverage. On July 5, Jody

Balko, a Progressive representative assigned to Werner's case, sent Werner a letter stating, in part:

> I will be the adjuster handling the medical portion of the above claim. Subject to the terms of the policy, Progressive will pay up to $5,000 under the medical payments coverage for the medical bills incurred as a result of the accident. Please be advised that payment will be issued to the medical provider directly unless you notify Progressive otherwise. . . . Should any disputes arise with the provider as a result of this review, the provider should contact our office. Unless you are notified otherwise in writing, Progressive will deal with the provider directly regarding the disputes.

[Doc. 16, Ex. 5].

Balko included in the mailing a medical-form release and questionnaire "needed in order to

2

obtain the necessary medical reports and/or itemized statements from [Werner's] medical providers." [Doc. 21]. Werner completed, signed and returned this form.

Between July and November, 2002, Werner sent Progressive six bills for medical costs related to the motorcycle accident. After receiving each, Progressive directly paid the third-party provider that had sent the bill. Werner, however, submitted the majority of his bills to Medical Mutual of Ohio [MedMutual], his primary health insurance provider, for payment by it.

On November 27, Progressive sent Werner a letter asking whether he would submit additional bills. On December 4, Werner called Balko informing her that he recently had surgery and would submit additional related bills. After Werner submitted a bill for his surgery, Balko sent a check to Ohio Trauma Surgeons, Inc., on his behalf.

On January 28, 2003, Balko sent Michael Piacentino, Werner's counsel, a letter asking whether he would submit additional bills. Piacentino responded on February 3, informing Balko that he would send additional bills. Neither Piacentino nor Werner submitted additional bills.

On April 28, Primax Recoveries, Inc. [Primax], an independent collector working on behalf of MedMutual, mailed Progressive two Notices of Lien, informing Progressive that MedMutual had acquired a lien over Werner's remaining MedPay benefits.

On June 20, Balko called Piacentino to discuss the "Notice of Lien," but instead, allegedly received a message that the number was out of service. Balko, then, called Werner to discuss whether he had alternative contact information for Piacentino. Werner and Balko instead discussed his claim at length. Werner stated that collection agencies were sending him "collection notices in the mail on a regular basis" and "he [did] not know why [Piacentino had] not been submitting these bills . . . for processing." [Balko Dep. pp. 79-81]. Progressive alleges that Balko told Werner that

3

third parties were mailing her collection notices for medical bills relating to his motorcycle accident. Werner alleges that they did not discuss any collection notices from Primax or other third-parties.

On the same day, Balko mailed Piacentino two more letters. The first asked him to: "[p]lease contact me as to whether or not there are any additional bills to be submitted;" "[p]lease contact me at your earliest convenience with an update on your client's treatment;" and [p]lease forward any bills that you have to my office in the enclosed envelope." [Doc. 16, Ex. 12]. The letter further stated: "If I do not hear from you within [fourteen]days, I will be closing my file." [*Id.*]. The second letter stated:

> Please be advised that I am still trying to collect bills for your client regarding the above captioned motor vehicle accident. Your client has contacted me personally regarding the collection notices he is getting in the mail and would like a status update on his MedPay coverage. I have on file a lien from Primax, third party administrator for your client's health insurance carrier. However, I will need an itemized statement before I can make consideration for this bill. Please contact me as soon as possible.

[Doc. 16, Ex. 12].

Piacentino did not respond to either letter. On June 23, Primax mailed Progressive a second letter requesting that it pay MedMutual's subrogation claim.

On August 15, Balko issued Primax a check for $3,895 in satisfaction of the claimed lien. Primax never provided Progressive official documentation confirming the authenticity of the subrogation agreement between Werner and MedMutual. Progressive later determined that Primax did not have legal rights to Werner's unused MedPay benefits.

On August 18, Balko sent Piacentino a letter recounting Progressive's payments on Werner's behalf, including Progressive's most recent payment to Primax. The letter noted: "[because] your MedPay limit of $5,000 has been exhausted, I have closed my file." [Balko Dep. pp. 87-88].

4

On August 20, Fostoria Hospital and New Century Physicians filed suit against Werner seeking recovery of $851.05 for services rendered to him after the accident. On September 25, Piacentino contacted Progressive demanding that it seek return of Balko's payment to Primax. On November 20, Piacentino sent Balko a letter again requesting that Progressive demand return of the payment.

On July 21, 2004, Werner filed suit against Seibert for the accident. Werner included a claim against Progressive, alleging that he "is entitled payments arising out of the coverage provided by [the Progressive] policy including the uninsured/underinsured motorist coverage and/or medical payments provisions." [Doc. 21, Ex. 16]. On August 9, 2005, Werner dismissed his suit against Progressive without prejudice.

On February 7, 2007, Werner re-filed his suit as a class action.

Werner's breach of contract claim has two components: 1) because the insurance agreement was silent as to whom Progressive could pay, Progressive breached the policy by paying providers directly, instead of paying Werner, who then could have elected which provider to pay; and 2) the policy contained nothing that authorized Progressive to pay a collection agency acting on behalf of another insurance company that had also paid some of the bills Werner incurred as a result of the accident. Werner's additional bad faith claim alleges that Progressive's decisions as to whom to pay demonstrates, absent his prior consent, Progressive's bad faith and justifies imposition of punitive damages.

Alleging that how Progressive treated him is how it routinely treats all its MedPay insureds, Werner seeks class certification and $5,000,000 damages for the class.

**Standard of Review**

5

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party "must [then] set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. The nonmovant must show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Celotex*, *supra,* 477 U.S. at 324.

In deciding the motion for summary judgment, the court will believe the evidence of the non-moving party as true, it will resolve all doubts against the non-moving party, it will construe all evidence in the light most favorable to the non-moving party, and it will draw all inferences in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451,456 (1992). A court shall render summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to summary judgment as a matter of law.

The standard of review for cross-motions for summary judgment does not differ from the standard when one party files such a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). "[T]hat both parties have moved for summary judgment does not mean that the court must grant summary judgment as a matter of law for one side or the other." *Kennedy v. City of Zanesville*, 505 F.Supp.2d 456, 477 (S.D. Ohio 2007). The court must evaluate each motion on its merits. *Id.*

## Discussion

### 1. Breach of Contract

To demonstrate a breach of contract, plaintiff must prove the existence of a contract, plaintiff's performance of his obligation, defendant's breach, and plaintiff's damages or loss. *Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (1994).

A court must construe insurance contracts in accordance with the rules applicable to all written contracts.[1] *Hybud Equip. Corp. v. Sphere Drake  Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). The court must reasonably interpret an "insurance  contract 'in conformity with the parties's intentions as gathered from the ordinary and commonly understood meaning of the language employed.'" *Brooks v. All American Ins. Co.*, 2002 WL 31718868, *2 (Ohio App.) (quoting *Dealers Dairy Prod. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 339 (1960)).

If the policy's terms are clear and unambiguous, the court must enforce the contract. *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St. 3d 604, 607 (1999). "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St. 3d 306, 308 (2007).

---

[1]

Under Ohio law, interpretation of an insurance contract is, ordinarily, a question of law a court decides. *Costanzo v. Nationwide Mut. Ins. Co.*, 161 Ohio App.3d 759, 767(2005).

A contract's silence does not necessarily mean that the contract is ambiguous. *See e.g., East Ohio Gas Co. v. Akron*, 81 Ohio St. 33, 54-55 (1909) (explaining that where a contract is silent the court must take certain precautions before it imposes additional contractual terms). A court should not create an obligation not found in the contract's terms. *See Leigh v. Crescent Square Ltd.*, 80 Ohio App.3d 231, 235 (1992) ("it is widely held that courts may not imply additional terms in a contract or agreement where none clearly exists."). It must take great care that it does not make the contract speak where the parties by neglect or design left it silent. *Montgomery v. Liberty Twp. Bd. of Edn.*, 102 Ohio St. 189, 193 (1921).

If, however, the language is ambiguous, the court will construe it "liberally in favor of the insured and strictly against the insurer." *Brooks*, *supra,* 2002 WL 31718868, *2. To construe ambiguous language, a court may consider the parties' intent. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003).

I begin by finding that the insurance policy's explicit language contradicts Werner's arguments that Progressive's direct payment of Primax violated the contract. Most importantly, the pertinent provision provides that Progressive "will pay" usual and customary charges for reasonable and necessary expenses. The policy does not state "we will reimburse you," "we will indemnify you" or "we will hold you harmless" for those expenses; it simply states that Progressive will pay those expenses. The phrasing connotes that Progressive will make payments directly to, rather than reimburse the policyholder.

The subsequent provision, furthermore, explicitly provides that should any disputes arise regarding payment, Progressive will handle it between itself and the provider. Although this provision applies to dealings between Progressive and medical providers and not third-party

8

insurance companies, the agreement specifically contemplates that disputes may arise between third-parties and Progressive as to the distribution of funds and provides that Progressive will exclude the policyholder from the process. Accordingly, this provision further undercuts Werner's arguments.[2]

Second, in response to Werner's second allegation of breach, the policy does not preclude payments to subrogated claimants – after all, they were simply claiming reimbursement of their payment of Werner's reasonable and necessary medical expenses. While Progressive did pay another insurer, the payment was for medical bills from the accident. The insurer was merely a conduit through which Progressive paid the benefits.

The policy states "we will pay" the expenses. By not stating who will receive the payments, it does not exclude either providers or subrogated claimants.[3] Progressive's conduct satisfies the

---

[2]

Werner, in response, relies on an unrelated clause of the Agreement which states that Progressive may reduce MedPay benefits due Werner by the amount of other insurance benefits disbursed. The clause describes the MedPay benefits as "payable" to the policyholder. Contra to Werner's arguments, this clause in no way limits Progressive's direct payment of a third-party. Rather, it only proves that Progressive 'may' pay benefits to the policyholder. The clause does not describe the benefits as those that Progressive 'must' pay to the policyholder or those Progressive 'will pay' to the policy holder. Accordingly, Progressive's direct payment of a third-party did not breach this provision. In essence, Werner's problem remains the same. Werner bears the burden of showing that Progressive breached the contract. Werner, however, cannot identify a provision that prohibits direct payment to a third party for reasonable and necessary medical expenses.

[3]

There is a genuine dispute as to whether MedMutual was in fact subrogated as a matter of law and, thus, whether it legally could claim Werner's MedPay benefits. This, however, is a dispute between Werner and MedMutual, not between him and Progressive. Progressive fulfilled its obligation under the policy. Progressive dispensed funds for reasonable and necessary medical costs as a result of the automobile accident. Had Primax sought benefits for activities unrelated to the provision of medical services, Werner would have a stronger claim.

Werner cites 11 Couch, *Couch on Insurance* § 158.25 and *Lenoir v. Memorial Heights*, 139 S.E. 2d 901, 903 (N.C. Sup. Ct. 1965) – neither of which is binding on this court. Regardless, both merely find that a third party does not have legal rights to an insured's medical benefits, not that the insurance company's payment to a third party breached the insurance agreement. 11 Couch, *Couch*

9

terms of the contract – the payment of reasonable and necessary medical expenses.

Simply put, Werner cannot point to a provision of the policy that Progressive breached.

Werner primarily argues that Progressive breached the contract because the contract did not include a specific and explicit grant to Progressive to pay third-parties directly and to pay other insurance companies who had provided the policyholder medical services for injuries resulting from the covered accident.

Werner's argument misconstrues basic principles of contract interpretation. Where a contract is silent on a particular matter, the court does not automatically assume that the contract prohibited defendant from taking such action. Rather, the court must first determine whether the parties, either intentionally or neglectfully, left the contract silent. Even if neither is the case, before concluding that a breach has occurred, the plaintiff must prove using extrinsic evidence that plaintiff's interpretation accords with the parties' intent and understanding.

Regardless, were I to find that the contract was, in fact, ambiguous, I would reach the same result. All available extrinsic evidence shows that Progressive routinely and regularly paid all third party providers directly.

Immediately after the accident, Progressive told Werner that it would directly pay third-party providers for all medical costs. Werner did not complain about this authority; indeed, he acquiesced by mailing Progressive seven bills, each of which Progressive paid directly to the provider.

Werner presents nothing suggesting that he reasonably expected that Progressive would not directly pay third-parties. He likewise points to nothing stopping Progressive from paying collection agencies seeking payment for medical expenses arising out of the covered accident.

_____

*on Insurance* § 158.25; *Lenoir*, *supra,* 139 S.E. at 902-03.

10

The court's duty to construe an insurance contract liberally in the insured's favor gives it no license to invent new terms for which no basis exists. *See King v. State Farm Ins. Co.*, 2003 WL 22989238, *3 (Ohio App.) ("This rule will not be applied so as to provide an unreasonable interpretation of the policy language.").[4]

Finally, my decision accords with the general understanding that "if the manner of payment and the medium of payment are not specified in the contract of insurance, the legal obligation of the insurance is to pay the debt in accordance with the usual and customary medium of making such payments in the ordinary course of business." 44A Am Jur 2d Insurance § 1725. Werner's submission of bills to Progressive and its direct payment to providers established a course of dealing as to disbursement of Werner's insurance benefits. *See Cooper Tire and Rubber Comp. v. Warner Mechanical Corp.*, 2007 WL 881499, *5 (Ohio App.) (finding that plaintiff's continued acceptance, without objection, of insufficient insurance certificates established a course of dealing). Likewise, as Werner admits, Progressive regularly pays insurance benefits directly to third party collection agencies representing third-party insurance companies.

## 2. Bad Faith

---

[4]

This case, furthermore, differs significantly from coverage-denial cases for which jurists created the rule of liberal construction in the insured's favor. *See Webster v. Dwelling House Ins. Co.*, 53 Ohio St. 558, 564 (1895) ("This rule has been very uniformly applied to conditions and provisions in policies of insurance, on the ground that though they are inserted for the benefit of the underwriters, their office is to limit the force of the principal obligation."); *see also, Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St. 2d 166, 167 (1982) ("The sole question presented is whether the policy of insurance issued by appellant to the Gomolkas and in force at the time of the accident to Mr. Gomolka extended to them underinsured motorist coverage, in addition to a conceded uninsured motorist coverage."); *Home Indem. Co. v. Plymouth*, 146 Ohio St. 96, 103 (1945) ("With such broad coverage under the policy, limited only by specific exceptions, was it within the contemplation of the parties to exclude Moore from such coverage . . ."). Progressive did not decline coverage or refuse to pay benefits: Werner faults Progressive, rather, for *too readily* providing coverage and disbursing benefits.

11

A plaintiff may bring a claim for the tort of bad faith as a separate action, apart from an insured's action alleging breach of contract. *Mid-American Fire & Cas. Co. v. Broughton*, 154 Ohio App. 3d 728, 735 (2003). A bad faith cause of action arises when an insurer: 1) intentionally refuses to satisfy an insured's claim without lawful basis; or 2) without reasonable justification, fails to determine whether its refusal had a lawful basis. *Id.* While the success of plaintiff's contract claim determines the first theory's viability, plaintiff may assert the second as an independent tort. *Id.*

Werner cannot prevail on a bad faith claim as to either of his theories. Progressive's conduct comported with the insurance policy and, therefore, was not unlawful. It did not involve a denial of coverage; thus, it cannot be charged with having failed to conduct a reasonable investigation before denying coverage.

To the extent that Werner bottoms his claim of bad faith on his contention that Progressive's payment lacked reasonable justification, his contention merits neither relief nor extended discussion.[5]

### Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Progressive Preferred Insurance Company's motion for summary judgment shall be, and the same hereby is granted; and

---

[5] Plaintiff's novel theory fails in any event. Progressive had reasonable justification to pay Primax. It contacted Progressive twice, providing documentation (albeit not legally binding) of their lien over the remaining benefits Progressive owed Werner. Balko, in return, contacted Werner's attorney twice. Receiving no response and recognizing Progressive's obligation to pay all medical expenses resulting from the accident, she paid Primax. Her conduct comported with the direct method of payment Progressive used when processing Werner's other bills. She showed good, not bad faith in what she did and when and why she did it.

12

2. John E. Werner's motion for summary judgment shall be, and the same hereby is denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

13